IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOHN L. JIMERSON,
    Petitioner,

vs.                                                    Case No.:  5:14cv349/RV/EMT

JULIE L. JONES,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

       This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1).  Respondent filed a motion to dismiss the petition as untimely, with relevant portions of the state court record (doc. 11).  Petitioner filed a response in opposition to the motion (doc. 14).

       The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

I.      BACKGROUND AND PROCEDURAL HISTORY

       The procedural background of this case is established by the state court record (doc. 11).[1] Petitioner was charged in the Circuit Court in and for Bay County, Florida with the following crimes in the following cases:

---

[1] Hereinafter all citations to the state court record refer to the electronically filed exhibits to Respondent's motion to dismiss (doc. 11) unless otherwise indicated.  Additionally, if a cited page has more than one page number, the court cites to the "Bates stamp" page number.

| | |
|---|---|
| Case No. 1999-CF-2562 | Burglary of an Occupied Dwelling (second degree felony) |
| Case No. 1999-CF-2592 | Burglary of a Dwelling (second degree felony) |
| Case No. 1999-CF-2593 | Burglary of a Dwelling (second degree felony) |
| Case No. 1999-CF-2594 | Burglary of a Dwelling (second degree felony) |
| Case No. 1999-CF-2603 | Burglary of a Structure (third degree felony) |
| Case No. 1999-CF-2604 | Burglary of a Dwelling (second degree felony) |
| Case No. 1999-CF-2616 | Armed Burglary of a Dwelling (first degree/life felony) |
| Case No. 1999-CF-2624 | Armed Burglary of a Dwelling (first degree/life felony) |
| Case No. 1999-CF-2625 | Burglary of a Structure (third degree felony) |
| Case No. 1999-CF-2626 | Burglary of a Dwelling (second degree felony) |
| Case No. 1999-CF-2627 | Burglary of a Dwelling (second degree felony) |
| Case No. 1999-CF-2659 | Burglary of a Dwelling (second degree felony) |

(Exs. C, E, G, I, K, M, O, Q, S, U, W, Y).  Petitioner's counsel filed a motion for appointment of two experts to examine Petitioner to determine his sanity at the time of the offenses and his competency to proceed in the criminal proceedings (Ex. Z).  The court granted the motion on December 9, 1999, and appointed two experts, David J. Smith, Ph.D., and Michael T. D'Errico, Ph.D. (Ex. AA).  The experts concluded that Petitioner was sane at the time of the offenses, and he was competent to proceed in the criminal proceedings (*see* Ex. HH at 46–48, 59).

On January 20, 2000, Petitioner signed a Plea, Waiver and Consent, pursuant to which he agreed to plead nolo contendere to each charge in each case listed *supra* (Ex. BB).  The parties agreed that Petitioner would be adjudicated guilty and sentenced to thirty-five years in prison, with pre-sentenced jail credit of 104 days, and that all sentences would run concurrently (*id.*).  The State agreed that it would not seek a habitual offender enhancement, and that it would not pursue any other pending or unfiled charges, including charges in Case No. 1999-CF-2678.[2] On January 20, 2000, the court accepted Petitioner's plea, adjudicated him guilty, and sentenced him to thirty-five years in prison on each of the armed burglary counts (two counts), fifteen years in prison on each count of burglary of a dwelling (eight counts), and five years in prison on each count of burglary of

---

[2] The State filed a No Information in Case No. 1999-CF-2678, in which Petitioner was charged with uttering a forged instrument.  The State also filed a No Information in Case No. 1999-CF-2628, in which Petitioner was charged with dealing in stolen property.  Additionally, the State filed a No Information in Case No. 2000-CF-216, in which Petitioner was charged with trafficking in illegal drugs, possession of marijuana, and possession of a controlled substance.

Case No.:  5:14cv349/RV/EMT

a structure (two counts), with all sentences to run concurrently and with pre-sentence jail credit of 104 days (Ex. DD). Petitioner did not appeal the judgment.

On January 14, 2002, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, in the state circuit court (Ex. HH at 1–14). The court summarily denied the motion in an order rendered February 5, 2002 (*id.* at 15–16). Petitioner appealed the decision to the Florida First District Court of Appeal ("First DCA"), Case No. 1D02-968 (*id.* at 70–71). On April 30, 2002, the First DCA dismissed the appeal for Petitioner's failure to comply with an order of the court (Ex. II). On August 25, 2003, Petitioner filed a motion to reinstate the appeal (Ex. JJ). The First DCA reinstated the appealed, and then affirmed the lower court's decision per curiam without written opinion on January 20, 2004 (Ex. LL). Jimerson v. State, 865 So. 2d 485 (Fla. 1st DCA 2004) (Table). The mandate issued February 18, 2004 (Ex. MM).

On December 2, 2013, Petitioner filed a motion to withdraw his plea, pursuant to Rule 3.170 of the Florida Rules of Criminal Procedure (Ex. OO at 1–6). The court dismissed the motion as untimely in an order rendered December 11, 2013 (*id.* at 12).

On December 31, 2013, Petitioner filed a second Rule 3.850 motion (Ex. OO at 13–49). The state circuit court summarily denied the motion in an order rendered March 18, 2014 (the court determined that all but one of Petitioner's claims were untimely, and the remaining claim (ground nine) was without merit) (*id.* at 131–37). Petitioner appealed the decision to the First DCA, Case No. 1D14-1772 (Ex. OO at 171–72, Ex. PP). The First DCA affirmed the lower court's decision per curiam without written opinion on June 30, 2014 (Ex. RR). Jimerson v. State, 145 So. 3d 834 (Fla. 1st DCA 2014) (Table). The mandate issued August 22, 2014 (Ex. UU). Petitioner filed a petition for discretionary review in the Supreme Court of Florida, Case No. SC14-1683 (Ex. YY). The state supreme court dismissed the petition for lack of jurisdiction on October 23, 2014 (Ex. AAA). Jimerson v. State, 153 So. 3d 906 (Fla. 2014) (Table).

On October 20, 2014, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800 of the Florida Rules of Criminal Procedure (Ex. CCC at 1–15). The state circuit court summarily denied the motion in an order rendered November 7, 2014 (*id.* at 36–37). Petitioner appealed the decision to the First DCA, Case No. 1D14-5434 (Ex. OO at 71). The First DCA

affirmed the lower court's decision per curiam without written opinion on February 10, 2015 (Ex. DDD). Jimerson v. State, 158 So. 3d 567 (Fla. 1st DCA 2015) (Table). The mandate issued March 10, 2015 (Ex. EEE).

Petitioner filed the instant federal habeas action on December 22, 2014 (doc. 1 at 15). He raises the following ground for relief:

> Ground One: "Attorney's failure to investigate the case and facts relying on a misapprehension of sentencing possibilities suppressed an available and factual defense resulting in an ill-advised plea of guilty to substantive charges that Petitioner is 'actually innocent.' Convictions and detention is [sic] constitutionally unlawful."
>
> Ground Two: "Attorney's misapprehension of the sentencing possibilities and patent misadvice which prompted the plea renders the plea unknowing, involuntary, and invalid."
>
> Ground Three: "Attorney's deficient performance caused Petitioner to receive an extreme sentence that is disproportionate to the offense, to that of the Petitioner [sic], and to that of similarly situated offenders, and is constitutionally and substantively unreasonable."
>
> Ground Four: "Petitioner's mental illness during period in which appeals should have been taken or furthered satisfies cause and prejudice requirement necessary to excuse procedural default. State court's finding of fact without a hearing is perforce unreasonable."

(doc. 1 at 6–11).

II.  ANALYSIS

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

     A.    <u>Applying § 2244(d)(1)(A) as the Statutory Trigger</u>

Respondent argues that the limitations period should be calculated from the finality date of the judgment of conviction, pursuant to § 2244(d)(1)(A) (doc. 11 at 5). Petitioner did not appeal the judgment of conviction and sentence, which was rendered on January 27, 2000; therefore, the judgment became final thirty days after its rendition, February 27, 2000. *See* <u>Hampton v. State</u>, 837 So. 2d 611 (Fla. 5th DCA 2003) (absent direct appeal, the judgment and sentence became final 30 days after rendition); <u>Davis v. State</u>, 693 So. 2d 700 (Fla. 2d DCA 1997) (same); <u>Gust v. State</u>, 535 So. 2d 642 (Fla.1st DCA 1988) (same). The one-year deadline for filing a § 2254 petition expired one year later, on February 27, 2001. On or before that date, Petitioner did not file his § 2254 petition in this court, nor did he file any post-conviction applications in state court that qualified for statutory tolling under § 2244(d)(2).[3] Therefore, applying the finality trigger of § 2244(d)(1)(A), Petitioner's federal petition is untimely by more than thirteen years.

     B.    <u>Applying § 2244(d)(1)(D) as the Statutory Trigger</u>

Petitioner concedes in his reply that his federal habeas petition is untimely (*see* doc. 14 at 8). Yet he also alleges he did not learn of the facts underlying Grounds One, Two, and Three until June of 2013 (*see* doc. 1 at 6, 8, 9; *see also* doc. 14 at 21–22), thus suggesting that § 2244(d)(1)(D) is the appropriate trigger for the limitations period. Petitioner submitted an affidavit of his mother, Susan Langford, stating that in June of 2013, Petitioner called her and asked if she had a copy of his sentencing scoresheet (*see* doc. at 55–56, Affidavit of Susan Langford ¶ 3). Ms. Langford states she obtained a copy of the scoresheet from the Bay County Clerk of Court on June 24, 2013, and enlisted

---

[3] Section 2244(d)(2) provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

the advice of an attorney (*id.*). She states that in July of 2013, the attorney explained certain issues involving the scoresheet to her and Petitioner, and at that time they learned that Petitioner's counsel had misadvised Petitioner at the time of the plea with regard to whether he had a defense to the armed burglary charges, and what his sentence exposure was if he did not accept the State's plea offer (*id.*).

For Petitioner's § 2254 petition to be deemed timely under § 2244(d)(1)(D), he must show that the factual predicates of his ineffective assistance of counsel ("IAC") claims could not have been discovered through the exercise of due diligence before February 26, 2013. The undersigned arrived at this date by working backward from the date on which Petitioner in fact filed the instant § 2254 petition:

> Petitioner filed his § 2254 petition on December 22, 2014. On that date, he had a properly filed state post-conviction application pending, specifically his Rule 3.800 motion, which he filed in state court on October 20, 2014. Therefore, the court will begin counting backward from that date. Fifty-eight (58) days of the federal limitations period expired between the date he filed that Rule 3.800 motion (October 20, 2014) and the date of the final denial of his next previous state post-conviction application, i.e., his Rule 3.850 motion, which reached final disposition on August 22, 2014.[4] From December 31, 2013 until August 22, 2014—the period during which Petitioner's Rule 3.850 motion was pending in state court—the limitations

---

[4] The court excludes the day of the event that triggers the period (October 20, 2014) and excludes the day the state court rendered its decision (August 22, 2014); thus, the court starts the calculation on August 23, 2014, and ends it on October 19, 2014.

Even though Petitioner attempted to invoke the jurisdiction of the Supreme Court of Florida to review the First DCA's decision affirming the denial of his Rule 3.850 motion, his attempt was a nullity, because, under existing law, the petition for review could not invoke the Florida high court's nonexistent jurisdiction, as the court stated in its order dismissing Petitioner's petition for lack of jurisdiction (*see* Ex. AAA). Therefore, the Rule 3.850 motion was "pending" only until August 22, 2014, the date of the First DCA's mandate. Further, because the state supreme court lacked jurisdiction to hear Petitioner's petition for review, the petition was not a "properly filed" application, for purposes of § 2244(d)(2). *See* Artuz v. Bennett, 531 U.S. 4, 8–9, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000) (holding that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings . . . ." and recognizing that where an application is accepted by the clerk of a court that lacks jurisdiction, "it will be pending, but not properly filed."); *see also, e.g.*, Turner v. Crews, No. 4:11cv488/WS/EMT, 2014 WL 4373214, at *4 n.1 (N.D. Fla. Sept. 3, 2014) (petitioner's petition for discretionary review filed in Supreme Court of Florida, seeking review of First DCA's affirmance of lower court's decision denying Rule 3.850 motion, was not "properly filed" for purposes of § 2244(d)(2)); Cotton v. Crews, No. 3:12cv550/MCR/CJK, 2014 WL 84084, at *5 (N.D. Fla. Jan. 9, 2014) (same).

Case No.: 5:14cv349/RV/EMT

period was arguably tolled.[5]  Counting back three hundred seven (307) days [365 - 58 = 307] from December 31, 2013, yields February 26, 2013.[6]

Accordingly, if the factual predicate on which Petitioner's IAC claims are predicated could have been discovered, with due diligence, prior to February 26, 2013, then his § 2254 petition, filed December 22, 2014, is untimely under § 2244(d)(1)(D).

"Section 2244(d)(1)(D) runs the [statute-of-limitations] clock from 'the date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence.'" McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1932, 185 L. Ed. 2d 1019 (2013) (ellipsis in original). The analysis of "factual predicate" and "due diligence" in § 2244(d)(1)(D) is symbiotic. The factual predicate first must be determined to give meaning to due diligence in discovering the claim for a particular petitioner's case. See Cole v. Warden, Ga. State Prison, 768 F.3d 1150, 1155 (11th Cir. 2014). "[I]t should go without saying that a factual predicate must consist of facts. Conclusions drawn from preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim." Id.  The "factual predicate" also has been referenced as the underlying "vital facts" of a petitioner's claim. Id. (citing Ford v. Gonzalez, 683 F.3d 1230, 1235 (9th Cir. 2012); Mathena v. United States, 577 F.3d 943, 946 (8th Cir. 2009); McAleese v. Brennan, 483 F.3d 206, 214 (3d Cir. 2007); Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)).[7]

---

[5] The court assumes purely for argument's sake that the Rule 3.850 motion qualifies for statutory tolling under § 2244(d)(2). In actuality, it probably does not, because the state court denied most, if not all, of Petitioner's claims as time-barred. This court need not (and does not) decide whether the motion qualified as a tolling motion.

[6] Petitioner is not entitled to statutory tolling during the period his Rule 3.170 motion was pending. The state court definitively denied that motion as untimely; therefore, it was not "properly filed" within the meaning of § 2244(d)(2). See Pace v. DiGuglielmo, 544 U.S. 408, 417, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005) (petitioner's state postconviction petition, which was rejected by the state court as untimely under state statute of limitations, was not "properly filed" within the meaning of § 2244(d)(2)).

[7] The Eleventh Circuit's recognition of factual predicates, consisting of newly discovered evidence resulting in a statute of limitations start date later than the finality date of the conviction, has been limited. See, e.g., Day v. Hall, 528 F.3d 1315, 1317 (11th Cir. 2008) (per curiam) (petitioner's claim challenging state parole board's decision denying parole was not discoverable, with due diligence, until the date of the parole board's decision, because there was no way petitioner could have known the parole board's reasons for denying him parole until that date); Rivers v. United States, 416 F.3d 1319, 1322 (11th Cir. 2005) (per curiam) (federal defendant's claim that federal sentencing court improperly calculated his criminal history category by including a prior state conviction was not discoverable, with due diligence, until the date of the state court's decision vacating the prior state conviction); Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002) (federal defendant's claim that appellate counsel failed to raise a sentencing issue on direct appeal was not discoverable until the date defendant received a copy of counsel's appellate brief omitting the sentencing issue); *see*

The due diligence required of a state prisoner in filing a § 2254 habeas petition must be determined on a case-by-case basis relative to the factual predicate. *Id.* at 1156.

The court must first determine the vital facts underlying each of Petitioner's IAC claims. In Ground One, Petitioner claims that counsel failed to investigate the "case facts," evidenced in the State's "discovery materials," which revealed a defense to the armed burglary charges, namely, that there was insufficient evidence to satisfy the elements of armed burglary (doc. 1 at 21–25; doc. 14 at 9, 12–13).[8] Petitioner asserts the "case facts" were that his only role in the offenses was merely that of "driver" and "lookout" (doc. 1 at 23; doc. 14 at 12). He alleges during the commission of each offense, he drove his car, waited in the car with it running, and acted as the "lookout" while his two co-defendants (Randy Word and Gary Whittaker) entered into each dwelling or structure and removed stolen items, including firearms and electronics (doc. 1 at 23–24; doc. 14 at 12). Petitioner alleges his co-defendants then placed the stolen items in the trunk of his (Petitioner's) car, which he opened by pushing the trunk release button in the glove compartment (doc. 1 at 24; doc. 14 at 12). Petitioner asserts he never entered any of the burglarized dwellings or structures, he never had physical possession of or access to any of the stolen items (including stolen firearms), and he never knew what items were stolen until after the offenses were completed (*id.*). Petitioner asserts these "case facts" were evidenced in the State's discovery materials, but the discovery materials were voluminous, and neither he nor counsel had an opportunity to review them prior to entering the plea, as evidenced by the transcript of the plea hearing (*see* doc. 14, Appendix, Exhibit 1, pp. 4–5).

The factual predicate of Ground One is thus that (1) discovery materials existed prior to the plea, (2) those materials evidenced Petitioner's role in each crime, as described *supra*, and (3) defense counsel did not review those materials or otherwise investigate the "case facts" prior to

---

*also* Ross v. Sec'y, Fla. Dep't of Corr., 517 F. App'x 731, 733–34 (11th Cir. 2013) (per curiam) (unpublished but recognized for persuasive authority) (statute of limitations began to run <u>after</u> petitioner's conviction became final, where petitioner claimed that counsel was ineffective for incorrectly advising him that an exonerating DNA report did not exist at the time of his guilty plea, but counsel had actually received the report prior to entry of the plea; petitioner acted with due diligence in relying on his lawyer's representations, thus statute of limitations must have begun to run, as a matter of law, after the time he was represented by the lawyer who misled him, that is, after his conviction became final).

[8] Petitioner alleges the discovery materials included the statements of his co-defendants (*see* doc. 14 at 9).

Case No.: 5:14cv349/RV/EMT

advising Petitioner to accept the State's plea offer. The issue, then, is whether Petitioner could have learned prior to February 26, 2013, through the exercise of due diligence, each of these facts.

The transcript of the plea and sentencing hearing held on January 20, 2000, shows that Petitioner received the discovery materials two weeks prior to that hearing, but he had not had an opportunity to review them (*see* doc. 14, Appendix, Exhibit 1, p. 4–5). Indeed, in Petitioner's first Rule 3.850 motion, filed January 14, 2002, Petitioner alleged that the prosecutor handed him the "extensive discovery" at a pre-trial hearing (*see* Ex. HH at 6). Because Petitioner had actual possession of the discovery materials in January of 2000, he could have learned of their content, if he had exercised due diligence, well prior to February 26, 2013. Further, it goes without saying that Petitioner was well aware of his role in each of the offense at the time he entered his plea. Additionally, Petitioner could have learned, well prior to February 26, 2013, whether defense counsel had reviewed the discovery materials or otherwise investigated the facts prior to advising Petitioner to accept the State's plea offer. The undersigned thus concludes that during the thirteen-year period prior to February 26, 2013, Petitioner could have discovered, through the exercise of due diligence, the factual predicate of Ground One.

In Ground Two, Petitioner claims that counsel misadvised him that if he went to trial and was convicted of any one of the charges, the combination of his total sentence points of 402 on the Criminal Punishment Code ("CPC") scoresheet and the State's seeking a habitual offender enhancement would require the trial court to impose a life sentence (doc. 1 at 26–27; doc. 14 at 11). The underlying "vital facts" of this claim are (1) what Petitioner's total sentence points were, as reflected on his CPC scoresheet, and (2) whether the State intended to seek a habitual offender enhancement if Petitioner went to trial.

Petitioner admitted in his first Rule 3.850 motion that he saw his CPC scoresheet at the plea and sentencing hearing on January 20, 2000, so he was aware of its existence at that time (*see* Ex. OO at 20). He also states that at the plea hearing, the prosecutor offered to reduce the total sentence points to 363, which placed him below the score at which the court could automatically consider life imprisonment (*see* doc. 14 at 18). Petitioner states he did not actually obtain a copy of the CPC scoresheet until his mother obtained it from the clerk of court in June of 2013. However, the issue is not when Petitioner <u>actually</u> obtained the scoresheet; instead, it is whether Petitioner <u>could have</u>

obtained it (and thus learned his sentence computation), through the exercise of due diligence, prior to February 26, 2013. The undersigned readily concludes that Petitioner could have. Petitioner's mother attests that she requested the scoresheet from the clerk of court sometime in June of 2013, and she had it in her possession on June 24, 2013, less than one month after she requested it (*see* doc. 14, Appendix, Exhibit 7, Affidavit of Susan Langford). These facts suggest that if Petitioner had exercised due diligence, he could have obtained a copy of his scoresheet prior to February 26, 2013. Additionally, Petitioner knew at the time of his plea that the State intended to seek a habitual offender enhancement if he went to trial. Petitioner's mother attests in her affidavit that during a recess in the plea proceedings "with all parties present," the prosecutor stated that he would seek a habitual offender sentence if Petitioner went to trial (*see* doc. 14, Appendix, Exhibit 7, Affidavit of Susan Langford).[9] Further, the fact that the State gave up its right to seek habitual offender enhancement as a condition of the plea suggests the State would have pursued it if Petitioner rejected the plea and went to trial. The undersigned thus concludes that prior to February 26, 2013, Petitioner could have discovered, through the exercise of due diligence, the factual predicate of Ground Two.

In Ground Three, Petitioner appears to claim that counsel was ineffective for failing to advise him that a 35-year sentence (i.e., the State's plea offer) was unconstitutionally harsh, in light of the circumstances of the crimes (doc. 1 at 28–29; *see also* doc. 14 at 11). The vital facts here are (1) that the State made a 35-year plea offer, and (2) the underlying circumstances of the crimes. Obviously, Petitioner was aware of the State's 35-year offer at the time he accepted it, on January 20, 2000. Further, as discussed *supra* with regard to Ground One, Petitioner could have learned prior to February 26, 2013, with the exercise of due diligence, the underlying circumstances of the crimes and his role in them. Therefore, the undersigned thus concludes that prior to February 26, 2013, Petitioner could have discovered, through the exercise of due diligence, the factual predicate of Ground Three.

---

[9] Petitioner also knew that the State would seek a life sentence if he went to trial. At the plea hearing, the prosecutor expressly stated his intention to do so (*see* Ex. HH at 51–52).

In sum, Petitioner could have discovered, through the exercise of due diligence, the factual predicate of the claims asserted in his § 2254 petition prior to February 26, 2013. Even if Petitioner (or a lawyer) would have drawn new conclusions from those preexisting facts after February 26, 2013, those newly discovered conclusions do not affect the timeliness calculation under § 2244(d)(1)(D). Therefore, Petitioner's § 2254 petition, filed on December 22, 2014, is untimely.

  C.  Equitable Tolling

Petitioner asserts he is entitled to equitable tolling of the federal limitations period for two reasons. First, he received erroneous advice from an institutional law clerk, who wrote Petitioner's first Rule 3.850 motion in 2002, that there were no other avenues available to challenge his convictions (*see* doc. 14 at 6, 25–26, 32–36, *see also* doc. 14, Appendix, Exhibit 4, Affidavit of John Jimerson). Second, he suffers from mental impairments and mental incompetence *(see id.* at 6, 22–29).

"Because the time period specified in 28 U.S.C. § 2244 is a statute of limitations, not a jurisdictional bar, the Supreme Court has held § 2244(d) does not bar the application of equitable tolling in an appropriate case." Cole, 768 F.3d at 1157 (citing Holland v. Florida, 560 U.S. 631, 645, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010)). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (internal quotation marks omitted). As an extraordinary remedy, equitable tolling is "limited to rare and exceptional circumstances and typically applied sparingly." Cadet v. Fla. Dep't of Corr., 742 F.3d 473, 477 (11th Cir. 2014) (internal quotation marks omitted).

Equitable tolling is assessed on a case-by-case basis, considering the specific circumstances of the case. Hutchinson v. Florida, 677 F.3d 1097, 1098 (11th Cir. 2012); *see* Holland, 560 U.S. at 649–50 (clarifying "the exercise of a court's equity powers must be made on a case-by-case basis" (internal quotation marks and ellipsis omitted)). The petitioner has the burden of establishing his entitlement to equitable tolling; his supporting allegations must be specific and not conclusory. Hutchinson, 677 F.3d at 1099. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." Holland, 560 U.S. at 653 (internal citation and quotation marks omitted); *see* Smith v. Comm'r, Ala. Dep't of Corr., 703 F.3d 1266, 1271 (11th Cir.

2012) (per curiam) (acknowledging petitioners are not required "to exhaust every imaginable option, but rather to make reasonable efforts") (internal quotation marks omitted). Determining whether a factual circumstance is extraordinary to satisfy equitable tolling depends not on how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period. Cole, 768 F.3d at 1158 (quotation marks and citation omitted).

Petitioner's lack of legal knowledge and reliance on an institutional law clerk to assist him are not rare and exceptional circumstances. *See, e.g.,* Wakefield v. R.R. Ret. Bd., 131 F.3d 967, 969 (11th Cir. 1997) (ignorance of the law "is not a factor that can warrant equitable tolling"); Whiddon v. Dugger, 894 F.2d 1266, 1267 (11th Cir. 1990) (rejecting habeas petitioner's argument for cause based "on his nonlawyer status, on what he sees as poor advice by inmate law clerks, and on a contention that he ought to have had legal assistance in preparing his collateral petition"); *see also* Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (neither inmate's ignorance of the law, nor inadequacy of services of inmate law clerk who helped draft habeas petition, nor fact that prison law library was closed for fifteen days, entitled petitioner to equitable tolling of limitations period); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000) (habeas petitioner's pro se status and ignorance of the law are not "'rare and exceptional' circumstances because they are typical of those bringing a § 2254 claim."); DeLeon v. State of Fla. Dep't of Corr., 470 F. App'x 732, 734 (11th Cir. 2012) (unpublished but recognized for persuasive authority) ("The lack of a legal education [and] the absence of legal counsel in this collateral context . . . do not excuse a failure to file a § 2254 petition in a timely fashion."). Therefore, Petitioner's reliance upon the erroneous advice of an institutional law clerk does not entitle him to equitable tolling.

The court next addresses Petitioner's argument that he is entitled to equitable tolling due to his mental impairments and mental incompetence. Petitioner asserts he was diagnosed with adjustment disorder, depressive mood disorder, schizophrenic personality disorder, anti-social behavior disorder, and severe anxiety disorder (doc. 14 at 24). He alleges these mental illnesses have interfered with his ability to "appreciate his position," make rational choices, "cope and function to effect a legal pleading," and "continue[ ] or abandon [ ] further litigation of his appeals during the time period in which further litigation should have been sought" (*id.* at 24, 26). He

asserts his psychological history from the age of 10 to the date of his sentencing (January 20, 2000) shows he had multiple "crisis stabilization" hospitalizations, participated in inpatient and outpatient mental health programs and mental health counseling, and was prescribed psychotropic medications (*id.*). Petitioner alleges his mental illness is characterized by "a distorted view of the world around him and his position," "moments of delusion," "a greatly reduced ability to cope and carryout one's daily tasks," "detaching one's self in order to escape life stressors in his situation," and "abnormal ways of perceiving and behaving" (*id.* at 25). He asserts the record of the plea and sentencing proceedings includes documentation of his history of mental illness, including court-ordered psychological evaluations, and he has submitted documentation of his mental health treatment (*see* doc. 14 at 24–25, 28–29; *see* doc. 14, Appendix, Exhibit 8). Petitioner states his prison record does not include any documentation of disciplinary infractions or participation in programs or counseling, because he avoids all interaction with others (doc. 14 at 25).

Mental impairment is not per se a reason to toll the statute of limitations. *See* Hunter v. Ferrell, 587 F.3d 1304, 1309–10 (1th Cir. 2009). Rather, the alleged mental impairment must have affected the petitioner's ability to file a timely habeas petition. *Id.*; *see also* Lawrence v. Florida, 421 F.3d 1221, 1226–27 (11th Cir. 2005) (petitioner's contentions that his full scale IQ was 81 and he had "suffered from mental impairments his entire life," without more, were insufficient to justify equitable tolling because they did not establish a "causal connection between [the petitioner's] alleged mental incapacity and his ability to file a timely petition").

In the instant case, the record shows that Petitioner was examined for competency in the trial court, and the two competency evaluators concluded he was sane at the time of the offenses and competent to proceed in the state criminal proceedings (*see* Ex. HH at 48–49, 59). Additionally, although Petitioner submitted evidence of his mental health diagnosis and treatment during the period 1992 to 1994, documenting his diagnosis of adjustment disorder with depressed mood, depressive disorder, anti-social personality disorder, cannibus dependence, and benzodiazapine abuse (*see* doc. 14, Appendix, Exhibit 8), he has not submitted any evidence to this court suggesting he was mentally incompetent or mentally impaired during the time the federal limitations period was

running.[10]  Moreover, Petitioner does not allege he made any attempt during the period 2004–2013, even through inmate law clerks, to ascertain the federal filing deadline or to file his federal petition on time.  *See, e.g.*, Bell v. Sec'y, Dept. of Corrections, 248 F. App'x 101, 104–05 (11th Cir. 2007) (unpublished but recognized for persuasive authority) (prisoner did not show diligence because there was no evidence that prisoner attempted to access the prison library or determine the applicable limitations period until after it expired); Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) ("Mr. Miller has provided no specificity regarding the alleged lack of access and the steps he took to diligently pursue his federal claims.").  In the absence of any evidence showing a causal connection between Petitioner's alleged mental impairments and his ability to file a timely § 2254 petition, he has failed to demonstrate entitlement to equitable tolling.  *See* Lawrence, 421 F.3d at 1226–27; *see also, e.g.*, Fox v. McNeil, 373 F. App'x 32, 34 (11th Cir. 2010) (unpublished but recognized for persuasive authority) (petitioner's alleged mental incompetence did not warrant equitable tolling of AEDPA's one-year limitations period for filing a petition for writ of habeas corpus; petitioner was able to file several pro se motions in state court for post-conviction relief, he ultimately filed a habeas petition, and he failed to establish a causal link between his claimed mental incompetence and the untimely filing of the petition).

> D.  Absence of Counsel During Initial-review Collateral Proceeding

Petitioner also argues that the late filing of his federal petition was caused by his lack of legal representation in his first Rule 3.850 proceeding (doc. 14 at 11, 30).  He relies upon Martinez v. Ryan, — U.S. —, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012) in support of this argument (*id.* at 30–36).

The Eleventh Circuit has held that the reasoning of the Martinez rule does not apply to the AEDPA's limitations period in § 2254 cases or any potential tolling of that period.  *See* Arthur v. Thomas, 739 F.3d 611, 628–31 (11th Cir. 2014).  Therefore, Martinez affords Petitioner no relief in overcoming the time bar in this case.

---

[10] The court notes that in a psychological assessment conducted on November 5, 1993, the evaluator opined that it was difficult to know and quantify the type of anxiety or depression from which Petitioner suffered at that time, and "[i]t is likely that this could be a[n] organic mood and anxiety disorder related to his continual use of marijuana and other drugs" (doc. 14, Appendix, Exhibit 8).  Presumably, Petitioner has not been using marijuana or other drugs during his incarceration.

Case No.:  5:14cv349/RV/EMT

E. Actual Innocence

Petitioner additionally argues he is entitled to review of his claims through the "actual innocence" exception to the time bar (doc. 14 at 7–20). In McQuiggin v. Perkins, the Supreme Court held that there is an "equitable exception" to the statute of limitations set forth in § 2244(d), but only when the petitioner presents new evidence that shows it is more likely than not that no reasonable juror would have convicted him. 133 S. Ct. at 1928, 1931, 1933. The Court cautioned that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of [ ] new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Id. (quoting Schlup v. Delo, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) and citing House v. Bell, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006)). The Supreme Court stated in Schlup:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

513 U.S. at 327.

A habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar; however, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence. See McQuiggin, 133 S. Ct. at 1935. As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]." 513 U.S. at 332; see also House, 547 U.S. at 537.

The Supreme Court has explained that "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998). Further, a voluntary and intelligent plea of guilty made by an accused, who has been advised by competent counsel, is not vulnerable to collateral attack. Id. 614 U.S. at 621.

Here, Petitioner asserts that the evidence was insufficient to satisfy the four elements of armed burglary (doc. 14 at 12–13). He alleges his only role in the offenses was merely that of "driver" and "lookout" (doc. 1 at 23; doc. 14 at 12). As previously noted, Petitioner alleges during

the commission of each offense, he drove his car, waited in the car with it running, and acted as the "lookout" while his two co-defendants (Randy Word and Gary Whittaker) entered into each dwelling or structure and removed stolen items, including firearms and electronics (doc. 1 at 23–24; doc. 14 at 12). Petitioner alleges his co-defendants then placed the stolen items in the trunk of his (Petitioner's) car, which he opened by pushing the trunk release button in the glove compartment (doc. 1 at 24; doc. 14 at 12). Petitioner asserts he never entered any of the burglarized dwellings or structures, he never had physical possession of or access to any of the stolen items (including stolen firearms), and he never knew what items were stolen until after the offenses were completed (*id.*). He contends this evidence demonstrates that none of the elements of armed burglary were satisfied (*id.*).

At the time of the offenses in September and October of 1999 (*see* Exs. C, E, G, I, K, M, O, Q, S, U, W, Y), Florida law defined burglary as "entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, . . . ." Fla. Stat. § 810.02(1)(a) (eff. June 8, 1995). Burglary was a first degree felony, punishable by life imprisonment, if, in the course of committing the offense, the offender is or becomes armed with a dangerous weapon within the dwelling or structure. *See* Fla. Stat. § 810.02(2)(b). Burglary was a second degree felony if the offender enters or remains in a dwelling. *See* Fla. Stat. § 810.02(3)(a), (b). It is a third degree felony if the offender enters or remains in an unoccupied structure. *See* Fla. Stat. § 810.02(4)(a). A firearm stolen during the burglary may form the basis for enhancing the burglary to armed burglary. *See* Williams v. State, 517 So. 2d 681, 682 (Fla. 1988) (defendant was properly convicted of armed burglary, even though he armed himself with the firearms during the commission of the burglary and did not enter the premises armed).

Additionally, Florida law imposed criminal liability based upon a principal theory:

> Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.

Fla. Stat. § 777.011 (eff. July 1, 1997).  Additionally, "where several persons combine to commit an unlawful act, each is criminally responsible for the actions of his associates committed in furtherance or prosecution of a common design." Hampton v. State, 336 So.2d 378, 379–80 (Fla. 1st DCA 1976).  "The key is whether the extra criminal act done by one's confederate is in furtherance or prosecution of the initial common criminal design." *Id.* at 380 (footnotes omitted).

Here, the theft of firearms by one or both of Petitioner's co-defendants during two of the burglaries was clearly an act in furtherance of the common criminal design to commit burglary. Further, the facts to which Petitioner admits (i.e., being the driver and owner of the vehicle used during the burglaries, acting as the "lookout" while his co-defendants committed the burglaries, keeping the vehicle running for his co-defendants to make a get-away after leaving the burglarized dwellings and structures, and opening the trunk for his co-defendants to secret and transport items stolen from the burglarized dwellings and structures) show that Petitioner was a willing, active participant in the burglaries.  Therefore, the evidence would have been sufficient to convict Petitioner of armed burglary.  *See* Hardee v. State, 516 So. 2d 110, 111 (Fla. 4th DCA 1987); *see also* A.F. v. State, 568 So. 2d 94, 96 (Fla. 2d DCA 1990) (citing Hardee).

Petitioner has not supported his "actual innocence claim" with any new reliable evidence showing that he did not commit the acts that constituted the crimes of which he was convicted. Moreover, Petitioner cannot characterize the circumstances of the crimes as "newly discovered," because they were obviously known to him at the time he entered his plea.  Therefore, the undersigned concludes Petitioner has failed to show he is entitled to review of his habeas petition through the "actual innocence" gateway.

III.     CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(a), Rules Governing Section 2254 Cases.  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.  Rule 11(a) additionally provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Respondent's motion to dismiss (doc. 11) be **GRANTED**.
2. That the habeas petition (doc. 1) be **DISMISSED** with prejudice as untimely.
3. That a certificate of appealability be **DENIED**..

At Pensacola, Florida, this 28th day of August 2015.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.**  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**